UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROBERT SMITH,                                                    Case No. 15 CV 932
                Plaintiff,

      -against-                                                 **COMPLAINT**

THE CITY OF NEW YORK, SERGEANT                          JURY DEMAND
DAVID VELOZ, P.O. RYAN WALKER
[SHIELD # 23533], COMMISSIONER
JOSEPH PONTE, JOHN DOE and JANE
DOE #1-5 (the names John and Jane Doe
being fictitious, as the true names are
presently unknown),
                Defendants.
------------------------------------------------------------------------X

Plaintiff, ROBERT SMITH, by his attorney, The Law Offices of UGO UZOH, P.C., complaining of the defendants herein, The City of New York, Sergeant David Veloz, P.O. Ryan Walker [Shield # 23533], Commissioner Joseph Ponte and John Doe and Jane Doe #1-5 (collectively, "Defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

1. This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983, and arising under the law and statutes of the City and State of New York.

## JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

3. As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

COMPLIANCE WITH N.Y. GEN. MUN. LAW REQUIREMENTS

4. Plaintiff timely made and served a notice of claim upon the defendants in compliance with N.Y. Gen. Mun. Law § 50-e.

5. At least thirty days have elapsed since the service of aforesaid notice of claim and adjustment or payment thereof has been neglected or refused.

6. This action is commenced within one year and ninety days after the happening of the event(s) upon which the claim(s) is based.

THE PARTIES

7. Plaintiff is and was at all times material herein a resident of the United States and the State of New York.

8. Defendant City of New York ("City") is a municipal corporation duly organized and existing under the laws of the State of New York.

9. The City of New York Police Department ("NYPD") and the City of New York Department of Correction ("NYDOC") are agencies of Defendant City, and all officers, including NYPD and NYDOC officers, referred to herein were at all times relevant to this complaint employees and agents of Defendant City.

10. Defendant Sergeant David Veloz was at all times material herein a sergeant employed by the NYPD. He is named here in his official and individual capacities.

11. Defendant P.O. Ryan Walker [Shield # 23533] was at all times material herein a sergeant employed by the NYPD. He is named here in his official and individual capacities.

12. Defendant Commissioner Joseph Ponte was at all times material herein the Commissioner of the NYDOC and was employed by the NYDOC. He is named here in his official and individual capacities.

13. Defendants John Doe and Jane Doe #1-5 were at all times material herein individuals employed by the NYPD and NYDOC. They are named here in their official and individual capacities.

14. At all times material to this Complaint, the aforementioned individual defendants acted toward plaintiff under color of the statutes, ordinances, customs, and usage of the State and City of New York.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

15. On or about October 10, 2013, at approximately 9:55 a.m., defendant Walker and unknown officers of the NYPD, acting in concert, arrested the plaintiff without cause at or within the vicinity of the Utica Avenue subway station (IRT Eastern Parkway Line -- at or close to Booth R625), which is located near Utica Avenue, Brooklyn, New York.

16. Prior to the arrest, plaintiff was traveling to Long Island City, New York, for a meeting.

17. Plaintiff entered the subway station through the gate as he did not have any money to pay for the subway fare.

18. Immediately thereafter, defendant Walker approached the plaintiff on the subway station's platform and demanded his identification card.

19. Plaintiff promptly produced his identification card.

20. When defendant Walker inquired whether the plaintiff paid his subway fare, plaintiff answered no, and explained that the reason why he did not pay the fare was because he did not have any money.

21. Defendant Walker then informed the plaintiff that he would run a warrant check on him and would issue a notice of violation and eject him from the subway station in accordance with NYCRR 1050.12, if he did not have any outstanding warrants.

22. Shortly thereafter, defendant Walker arrested the plaintiff.

23. Defendant Walker proceeded to tightly handcuff the plaintiff with his hands placed behind his back.

24. Defendant Walker then subjected the plaintiff to an illegal search.

25. Following the arrest, plaintiff was transported to NYPD-Transit District 32 for arrest processing.

26. While at the station house, the plaintiff was further subjected to another illegal search.

27. Eventually, after detaining the plaintiff at the station house for a lengthy period of time, plaintiff was transported to the Central Booking to await arraignment.

28. While plaintiff was awaiting arraignment, defendants Walker, Valoz, John Doe and Jane Doe (hereinafter "police officers") met with prosecutors employed by the Kings County District Attorney's Office.

29. During this meeting, defendant police officers falsely stated to the prosecutors, among other things, that the plaintiff had an outstanding warrant and was wanted in Tallahassee, Florida, for the crime of felony battery (CPL 57006-FL).

30. When the plaintiff finally learned from his criminal defense attorney that he was being held and charged with a crime that was committed in Florida, plaintiff duly protested and informed the defendants that they had the wrong person.

31. Plaintiff, who had never visited nor resided in Florida, duly informed defendants that he had never been to Florida, does not reside in Florida, does not have anything to do with Florida and did not commit any crime in Florida.

32. Plaintiff requested defendants to check the information from Florida to make sure that they had the right person.

33. In accordance with the information available to defendant police officers at the time, Robert Baker Smith -- not the plaintiff whose middle name is Lee -- was the individual who was wanted in Florida.

34. Further, Robert Baker Smith, was born on February 3, 1970, and is older than the plaintiff.

35. Additionally, Robert Baker Smith and the plaintiff do not resemble each other in any way, do not have matching tattoos and are not of the same height or weight as Robert Baker Smith who, upon information and belief, is approximately 5'11" tall and weighs approximately 229 lbs, is much taller and heavier than the plaintiff.

36. Moreover, defendants had the plaintiff's DNA and fingerprints on file, as well as other personal identification information, none of which matched Robert Baker Smith's personal information.

37. On or about October 11, 2013, the plaintiff was arraigned on charges for theft of services [PL 165.15(3)] and trespass [PL 140.05], in connection with his admitted failure to pay the subway fare.

38. Following his arraignment, the criminal court dismissed the charge against the plaintiff for trespass and sentenced the plaintiff to time served in connection with the charge against him for theft of services.

39. Because of the false information provided by defendant police officers, the plaintiff was remanded without bail in connection with the false charge against him for felony battery (CPL 57006-FL).

40. As a result, plaintiff was transported to Rikers Island, and was incarcerated at said facility for several days.

41. Eventually, on or about October 15, 2013, the plaintiff appeared before the criminal court in connection with the false charge against him for felony battery (CPL 57006-FL).

42. On or about October 15, 2013, the criminal court after announcing that the plaintiff clearly is not Robert Baker Smith who was wanted in Florida dismissed the false charge against the plaintiff for felony battery (CPL 57006-FL).

43. Notwithstanding the above, defendants refused to release the plaintiff.

44. Upon information and belief, defendants, acting without any court order or valid legal process authorizing them to hold and detain the plaintiff, transported the plaintiff back to Rikers Island where he was further held and detained for several more days.

45. Eventually, on or about October 22, 2013, defendants released the plaintiff from his unlawful incarceration.

46. Upon information and belief, NYDOC had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting innocent persons, accepting custody of innocent persons and detaining innocent persons

without a court order or valid legal process, and detaining sentenced prisoners beyond the timeline mandated by a competent court or lawful order.

47. Upon information and belief, Defendant Ponte established, authorized, approved, ratified, enabled and/or facilitated the aforesaid NYDOC's unlawful practices.

48. In accordance with the said unlawful practices of the NYDOC, the unknown individuals employed by NYDOC acting in concert with defendant police officers, rearrested the plaintiff without cause on October 15, 2013, and unlawfully detained the plaintiff at Rikers Island for several days thereafter.

49. That each and every officer who responded to and/or was present at the location of the arrest and/or at the precinct, station house or facility knew and was fully aware that the plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring. Further, each and every officer and/or individual who responded to, had any involvement and/or was present at the location of the assault knew and was fully aware of the assault and had a realistic opportunity to intervene to prevent the serious harm detailed above from occurring.

50. Nonetheless, defendants did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to protect and ensure the safety of the plaintiff.

51. As a result of the aforesaid actions by defendants, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, loss of rights to familial association, wages and financial losses, pain and damage, and damage to reputation.

FIRST CAUSE OF ACTION: FALSE ARREST, EXCESSIVE USE OF FORCE, CONSPIRACY, FAILURE TO INTERVENE, UNREASONABLE SEARCH AND SEIZURE, UNREASONABLE DETENTION, DENIAL OF EQUAL PROTECTION OF THE LAWS, DISCRIMINATION & DENIAL OF DUE PROCESS RIGHTS - against individual officers

52. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 51 of this complaint as though fully set forth herein.

53. The conduct of the individual officers, as described herein, amounted to false arrest, excessive use of force, conspiracy, failure to intervene, unreasonable search and seizure, unreasonable detention, denial of equal protection of the laws, discrimination and denial of due process rights.

54. Such conduct violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

55. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: FABRICATION OF EVIDENCE, DENIAL OF RIGHT TO A FAIR TRIAL & MALICIOUS PROSECUTION - against Defendant police officers including Walker & Veloz

56. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 55 of this complaint as though fully set forth herein.

57. The conduct of the defendant police officers including Walker, Veloz and John Doe and Jane, as described herein, amounted to fabrication of evidence, denial of right to a fair trial and malicious prosecution.

58. Such conduct violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

59. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

THIRD CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against Defendant City

60. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 59 of this complaint as though fully set forth herein.

61. Defendant City, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

62. Additionally, defendant City, acting through the NYDOC, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its officers concerning actions to take to ensure that inmates are not detained beyond their sentence and that innocent persons are not detained without a court order or valid legal process.

63. Further, defendant City, acting through Kenneth P. Thompson and the Office of the District Attorney of the Kings County, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and informants, assessing the credibility of witnesses and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and/or obligation of candor toward the court.

64. Defendant City, acting through aforesaid NYPD, NYDOC and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching,

8

|     | |
| --- | --- |
|     | seizing, abusing, humiliating, degrading, assaulting, and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they were involved in narcotics, drugs, guns, robbery and/or other illicit activities. |
| 65. | Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct. |
| 66. | For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and that it had settled at least one of the lawsuits brought against it concerning racial profiling. |
| 67. | In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New York, acting through the NYPD, engages in unlawful stop and frisk. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same). |
| 68. | Additionally, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant. |
| 69. | Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses. |
| 70. | In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within |

|   |   |
|---|---|
|   | the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators." |
| 71. | Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach." |
| 72. | Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011). |
| 73. | Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs. |
| 74. | Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records. |
| 75. | Recently, the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes. . . ." That Judge Reichbach expressed shock at |

what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

76. Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

77. In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

78. In addition to the named individual defendants, several officers of the NYPD assigned to NYPD-Transit District 32 -- as the named individual defendants -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

79. Most of the arrests and charges made by officers assigned to NYPD-Transit District 32 are usually voided and/or dismissed by prosecutors for lack of evidence.

11

80. Defendant City has settled numerous lawsuits brought in this district against several officers assigned to the NYPD-Transit District 32 concerning similar arrests and charges as those described herein.

81. Additionally, numerous lawsuits and/or claims have been brought against defendant City alleging that inmates were detained beyond their sentence and/or that innocent persons were detained by NYDOC without a court order or valid legal process. *See, e.g., Kroutchev Demosthene v. City of New York* (EDNY Case No. 14 CV 816); *Michael Porter v. City of New York* (SDNY Case No. 12 CV 3764); *Russell Hernandez v. City of New York*, (New York State Supreme Court, Bronx County, Index No. 350180/2011).

82. Defendant City maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiff's injuries as described herein.

83. The actions of defendants, acting under color of State law, deprived plaintiff of his due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in his person and property, to be free from abuse and the use of force and the right to due process.

84. By these actions, defendants have deprived plaintiff of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

FOURTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12 - against Defendants

85. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 84 of this complaint as though fully set forth herein.

86. By reason of the foregoing, and by arresting, detaining and imprisoning plaintiff without probable cause or reasonable suspicion, and harassing and assaulting him and depriving him of due process and equal protection of laws, defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

87. In addition, the individual officers conspired among themselves and conspired with other individuals to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

88. The individual officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. The individual officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. The individual officers acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

89. Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiff's state constitutional rights.

<u>FIFTH CAUSE OF ACTION: OTHER NEW YORK TORTS - against individual officers</u>

90. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 89 of this complaint as though fully set forth herein.

91. The conduct of the individual officers, as described herein, amounted to false arrest/imprisonment, unreasonable search and seizure, unreasonable

   detention, assault and battery, malicious prosecution, negligence, breach of special duty or relationship, defamation, tortuous interference, fraud, trespass, and negligent and intentional infliction of emotional distress.

92. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SIXTH CAUSE OF ACTION: NEGLIGENT HIRING AND RETENTION OF EMPLOYMENT SERVICES - against Defendant City

93. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 92 inclusive, with the same force and effect as though more fully set forth at length herein.

94. Upon information and belief, defendant City, through its various agencies and departments including the defendants in this action, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

95. Upon information and belief, defendant City, through its various agencies and departments including the defendants in this action, owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that an injury to plaintiff or to those in a like situation would probably result from such conduct described herein.

96. Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that defendant officers were not prudent and were potentially dangerous.

97. Upon information and belief, defendant City's negligence in hiring and retaining defendant officers proximately caused plaintiff's injuries.

WHEREFORE, plaintiff respectfully prays judgment as follows:

 a. For compensatory damages against all defendants in an amount to be proven at trial;

 b. For exemplary and punitive damages against all defendants in an amount to be proven at trial;

 c. For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

      d.      For such other and further relief as the court deems proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
        February 23, 2015

                UGO UZOH, P.C.

                /s/

                _____

By:    Ugochukwu Uzoh (UU-9076)
         Attorney for the Plaintiff
         304 Livingston Street, Suite 2R
         Brooklyn, N.Y. 11217
         Tel. No: (718) 874-6045
         Fax No: (718) 576-2685
         Email: u.ugochukwu@yahoo.com